Crew III, J. (dissenting in part and concurring in part).
We respectfully disagree with the majority’s conclusion that plaintiff is not entitled to a credit for the $300,000 he initially contributed to the construction of the marital residence and/or the $107,000 he used to purchase the parcel of real property located in Montgomery County (hereinafter the Montgomery property). To *821 be sure, as the majority has observed, there is no paper trail documenting the distribution of the $600,000 derived from the sale of plaintiff’s fuel oil business in 1987. In our view, this absence of documentation, which is entirely understandable given the length of the parties’ marriage, is not fatal to plaintiffs claim. There simply is no question that the foregoing proceeds—one half of which plaintiff testified he contributed to the construction of the marital residence—emanated from the sale of an admittedly separate, nonmarital asset, and defendant in no way disputes the source of this money.[3] Indeed, defendant, who initially was employed in plaintiffs business, testified that she did not work following the parties’ marriage in 1985 and did not return to the work force until the parties’ children, born in 1987 and 1989, were both in school. Hence, whatever income the parties had during the relevant time period came from plaintiff, and the record as a whole fails to establish that plaintiff commingled such funds and, in so doing, transformed his separate property into a marital asset (compare Carney v Carney, 202 AD2d 907, 908 [1994]).[4]
As for the income generated by plaintiffs various rental properties, the theoretical availability of such funds to finance either the construction of the marital residence or the acquisition of the Montgomery property in no way negates plaintiffs uncontradicted testimony that the moneys for such transactions actually derived from the sale of his business. Moreover, although the record does not establish in any meaningful way the precise amount of rental income that plaintiff was receiving at the time construction began on the marital residence and the Montgomery property was purchased in 1988, suffice to say that whatever funds were generated in this regard, which admittedly would be marital property, did not even remotely approach the $407,000 at issue. Accordingly, we are satisfied that plaintiff met his burden of establishing his entitlement to an additional credit in the amount of $407,000, representing plaintiffs sepa *822 rate contributions to the construction of the marital residence ($300,000) and the acquisition of the Montgomery property ($107,000) (see Maczek v Maczek, 248 AD2d 835, 836-837 [1998]; see also Judson v Judson, 255 AD2d 656, 657 [1998]; Zurner v Zurner, 213 AD2d 906, 908 [1995], lv denied 87 NY2d 802 [1995]).
Rose, J., concurs. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as denied plaintiff certain credits, ordered plaintiff to pay $300 per week in child support and $100 per week in maintenance and ordered equitable distribution of the parties’ marital property; plaintiff is credited with $58,000 to reflect his separate property and/or separate contributions to the marital residence and matter remitted to the Supreme Court for a redetermination of the equitable distribution of the parties’ property, plaintiffs child support and maintenance obligations; and, as so modified, affirmed.

. Although defendant indeed argues in her brief that the total funds required for the construction of the marital residence ultimately derived from various sources, including a mortgage in both parties’ names, contrary to the majority’s assertion, her testimony at trial in no way disputes or discredits plaintiff’s unequivocal claim that he contributed $300,000 to the initial construction of such residence and that the $300,000 at issue represented proceeds from the sale of a clearly separate, nonmarital asset.

. In this regard, defendant’s testimony “suggests” nothing more than that the parties had joint checking accounts at various points in their marriage, which falls far short of estabhshing that defendant deposited $300,000 of his separate funds into a particular joint account at a particular point in time and then used those “joint” funds to provide the initial financing for the construction of the marital residence.